# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Qwest Corporation,

      Plaintiff,

v.

Leroy Koppendrayer, Ellen Gavin,
R. Marshall Johnson, Phyllis Reha,
Gregory Scott, and Minnesota Public
Utilities Commission,

      Defendants.

and

Qwest Corporation,

      Plaintiff,

v.

Minnesota Public Utilities Commission,
R. Marshall Johnson, Leroy Koppendrayer,
Phyllis Reha, and Gregory Scott,

      Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 03-2942 ADM/AJB

Civil No. 03-3476 ADM/JSM

_____

Robert E. Cattanach, Esq., Mitchell W. Granberg, Esq., and Theresa M. Bevilacqua, Esq., Dorsey & Whitney LLP, Minneapolis, MN; Jason D. Topp, Esq., Qwest Corporation, Minneapolis, MN; Todd L. Lundy, Esq., Qwest Corporation, Denver, CO; and Peter A. Rohrbach, Esq., and Peter S. Spivack, Esq., Hogan & Hartson LLP, Washington, D.C., on behalf of Plaintiff.

Steven H. Alpert, Esq., Assistant Attorney General, St. Paul, MN, on behalf of Defendants.

Gregory R. Merz, Esq., Gray Plant Mooty, Minneapolis, MN; and David L. Lawson, Esq., and Christopher T. Shenk, Esq., Sidley Austin Brown & Wood LLP, Washington, D.C., on behalf of Intervenor Defendant AT&T of the Midwest States, Inc.[1]

_____

[1] AT&T of the Midwest States, Inc. is an Intervenor Defendant in Civil No. 03-2942.

Mark J. Ayotte, Esq., Thomas Erik Bailey, Esq., and Kevin M. Magnuson, Esq., Briggs and Morgan, P.A., Minneapolis, MN, on behalf of Intervenor Defendant AT&T Communications of the Midwest, Inc.[2]

## I. INTRODUCTION

This matter is before the undersigned United States District Judge on Plaintiff Qwest Corporation's ("Qwest" or "Plaintiff") Motion to Vacate (Case No. 03-2942) [Docket No. 134] and Motion to Set Aside Judgment (Case No. 03-3476) [Docket No. 76].[3]  Both Motions are premised on recent information that Defendant Gregory Scott, a commissioner of the Minnesota Public Utilities Commission ("MPUC"), may have participated in impermissible ex parte communications with Mary Tribby, AT&T's chief regulatory lawyer.  Scott is also accused of initiating employment discussions with Integra Telecom before his departure as a commissioner for MPUC.  Because no evidence has been proffered to suggest that the actions of Scott prejudiced Qwest in the instant cases, its Motions are denied.

## II. BACKGROUND

On August 25, 2004, this Court issued an Order denying Qwest's appeal of a liability order and two penalty orders issued by MPUC as a result of Qwest's failure to submit twelve interconnection agreements to MPUC for approval.  August 25, 2004 Order (Case No. 03-3476) [Docket No. 47].  Less than a month later, on September 13, 2004, this Court denied Qwest's appeal of an MPUC order concerning the rates Qwest was legally allowed to charge competitive

---

[2] AT&T Communications of the Midwest, Inc. is an Intervenor Defendant in Civil No. 03-3476.

[3] Because both Motions rely on the same arguments for relief, they will be considered together in this Order.

local exchange carriers who lease Qwest's telephone network. September 13, 2004 Order (Case No. 03-2942) [Docket No. 88]. Both Orders have been appealed to the Eighth Circuit. (Case No. 03-3476) [Docket No. 64]; (Case No. 03-2942) [Docket No. 115]. The Eighth Circuit heard oral arguments in Case No. 03-3476 on September 12, 2005, and affirmed this Court's decision on November 1, 2005, although Qwest has moved the Eighth Circuit for a rehearing en banc. Oral argument is currently set for December 15, 2005 in Case No. 03-2942.

In August 2005, MPUC released a report from the Minnesota Department of Administration regarding the conduct of Defendant Scott (the "Drawz Report"). Spivack Aff. (Case No. 03-3476) [Docket No. 80] Ex. 2. The Drawz Report examined Scott's negotiation for and acceptance of a position with Integra Telecom. The Drawz Report also included Scott's telephone and email records for a portion of his time as commissioner.[4] The telephone and email records indicated that Scott had been in regular contact with Mary Tribby, who served as AT&T's Chief Regulatory Counsel during the relevant time period. These contacts do not appear to be recorded in the ex parte files of MPUC. The email correspondence indicates a possible personal relationship between Scott and Tribby. The content of the phone conversations is unknown. Following a period of public comment in September and October 2005, MPUC authorized an independent investigation of the communications between Scott and Tribby.

### III. DISCUSSION

Federal Rule of Procedure 60(b) allows for relief from judgment for a variety of reasons, including newly discovered evidence. Although both cases have been appealed to the Eighth

---

[4] The telephone records covered the time period between July 2002 and May 2004; the emails are between November 2003 and May 2004, with the exception of February 2004.

Circuit, a pending appeal does not divest a district court of jurisdiction to consider a Rule 60(b) motion. Hunter v. Underwood, 362 F.3d 468, 475 (8th Cir. 2004). However, although a district court may consider a Rule 60(b) motion during the pendency of an appeal, it may not grant a Rule 60(b) motion without leave of the court of appeals. Winter v. Cerro Gordo County Conservation Bd., 925 F.2d 1069, 1073 (8th Cir. 1991). Qwest argues that it need merely show that Scott's conduct would have "probably produce[d] a different result" under Rule 60(b)(2) or, by clear and convincing evidence, that Scott's conduct prevented Qwest from "fully and fairly presenting its case" under Rule 60(b)(3). Callanan v. Runyun, 75 F.3d 1293, 1297 (8th Cir. 1996); Harley v. Zoesch, 413 F.3d 866, 870 (8th Cir. 2005).

     Qwest, however, has not proffered evidence to demonstrate that Scott's conduct may have produced a different result or that Qwest was prevented from fully and fairly presenting its case or defense. Although the evidence presented does indicate that ex parte contacts between Scott and Tribby may have occurred, no evidence has been adduced to demonstrate that any potentially improper contact between Scott and Tribby related to any substantive decisions of MPUC, much less the decisions at issue in these actions. For example, the contents of the phone conversations is completely unknown. Moreover, MPUC is conducting an independent investigation of the communications to determine whether reason exists to believe that a violation of law or rules has taken place. Additionally, the likelihood that Qwest was prejudiced by Scott's communications with Tribby is diminished by the fact that he was not the sole decision maker in these cases. Before Scott was involved in either case, Administrative Law Judges made recommendations to MPUC. Scott was only one of five MPUC commissioners

who determined to adopt the recommendations of the ALJs in both cases.[5]  Finally, the instant motions are not the only means by which Qwest may discover the information at issue.  Qwest currently is seeking the same information in <u>Firstcom, Inc. v. Qwest Corporation</u>, Case No. 04-995.[6]  Given the dearth of available evidence at this time and the existence of MPUC's independent investigation, Qwest's Motions are denied.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Plaintiff's Motion to Vacate (Case No. 03-2942) [Docket No. 134] is **DENIED**; and

2.  Plaintiff's Motion to Set Aside Judgment (Case No. 03-3476) [Docket No. 76] is **DENIED**.

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  November 30, 2005.

---

[5] Case No. 03-2942 was an appeal of a unanimous decision from the MPUC commissioners.  The file in Case No. 03-3476 is currently in the custody of the Eighth Circuit; thus, it can not be determined if the decision in that case was also unanimous.

[6] Qwest has also sought the information at issue in an identically titled action in the District of Colorado, Case No. 05-2107.  Recently, Judge Phillip S. Figa transferred a decision on discovery to the Minnesota action (Case No. 04-995) to avoid inconsistent results.